IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

LINDSEY JO R.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 1:18-cv-01435-JES-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 9), the Commissioner's Motion for Summary Affirmance (Doc. 13), and the Plaintiff's Reply (Doc. 15). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Lindsey Jo R. originally filed her application for disability insurance benefits (DIB) on May 25, 2012 and alleged disability beginning on May 15, 2012. Her claim was denied originally on August 22, 2012, upon reconsideration on January 25, 2013, and she thereafter requested a hearing concerning her DIB application. A hearing was held before an ALJ on December 10, 2013 at which time Lindsey Jo was represented by an attorney, and Lindsey Jo and a vocational expert (VE)

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 5) on the docket.

testified. Lindsey Jo amended her disability onset date at that time to June 1, 2009. The ALJ issued an unfavorable decision in January 2014 and the Appeals Council (AC) subsequently denied Lindsey Jo's request for review. Lindsey Jo then filed a civil action in this Court in May 2015. This Court affirmed the ALJ's decision, Lindsey Jo filed a notice of appeal, and the parties then agreed to remand the case for further administrative proceedings.

The parties' motion to remand the case was granted by the Seventh Circuit Court of Appeals, and this Court then issued an order remanding the case to the Commissioner for further administrative proceedings. In March 2017, the AC issued its own order remanding the case to an ALJ. On September 12, 2017, a second hearing was held before a different ALJ, the Honorable Shreese M. Wilson (ALJ). Lindsey Jo was again represented by an attorney, and she testified as did a different VE. Following that hearing, Lindsey Jo's claim was denied on September 29, 2017. Her request for review of the second Decision[2] by the AC was denied on April 3, 2018, making the ALJ's Decision the final decision of the Commissioner. Lindsey Jo filed the instant civil action seeking review of the ALJ's Decision on December 3, 2018.

## II

At the first hearing in December 2013, Lindsey Jo testified about the short-lived jobs she had since 2009. She explained those jobs ended due to her depression and anxiety. On her June 2012 Disability Report – Adult – Form SSA-3368, Lindsey Jo claimed the following mental conditions limited her ability to work: emotional distress; bipolar disorder; depression; anxiety; psychosis; multiple personalities; and learning disability. AR 183.

---

[2] This is the Decision with which Lindsey Jo takes issue and to which the Court limits its consideration. The ALJ indicated in the opening paragraph of this Decision that Lindsey Jo was represented by a non-attorney representative. *See* AR 596.

Upon questioning by her attorney, Lindsey Jo testified that being around a lot of people and in different environments made her anxious. She liked to shut herself in and she became nervous talking to people. She felt depressed "[s]ometimes a couple days a week, sometimes it could be just a couple days a month." AR 49. "Everyday" stressors put her into a depressed mood. *Id*. There were "maybe two to three times a week sometimes" when Lindsey Jo did not go anywhere and stayed on the couch at home. AR 49-50. She "quite often" switched between feelings of anxiety and feelings of depression. AR 50. At times, she was scared of open stairs and people grabbing at her ankles. She testified to drowsiness from her medications.

Lindsey Jo testified that on an average day, she got up to get something to eat, took her medicine, usually helped her son get up and ready for school, took him to his bus stop, and returned home. She said she had problems following what was on TV and had trouble remembering things. She further testified about her previous work and explained that she missed work because of depression; she had an anxiety attack one day while at work and was sent home. She "sometimes" tried to call someone to take over her shift. AR 58. She left work early "quite often" within the last week of her last job. *Id*.

Lindsey Jo also testified that she and her husband took their son to the park a couple times in the summer and occasionally took their son to her father's house to swim during the summer. The VE was later questioned.

At the second hearing on September 12, 2017, Lindsey Jo was 31 years old and lived with her seven-year-old son and her boyfriend in an apartment. She was divorced and explained that "on occasion," she found jobs, but also lost those jobs. AR 624. Lindsey Jo testified that in the last 15 years prior to her date last insured, she did janitorial work and housekeeping/cleaning among other things. Since the last hearing, Lindsey Jo worked as a bartender/cook, an activities assistance, and

3

a postal employee. She did each of those jobs for only months. Her last day of work at a job as a deli clerk was in July 2017. When asked why her various jobs did not last very long, Lindsey Jo answered that she had a lot of anxiety when she started to be around people and then she became very depressed which caused her to start calling into work and making up excuses not to come in. She testified that the same feelings occurred when she worked jobs that did not involve being around people as often.

At the beginning of his questioning, Lindsey Jo's attorney explained he was going to ask her questions with a focus upon the time period on or before her date last insured, September 30, 2014. Lindsey Jo confirmed she was diagnosed with bipolar disorder and the symptoms from that affected her on a regular basis back in 2014 the same as they affected her at present. She had mood swings "quite often" ("highs and lows"), days when she was "very, very depressed" and did not do anything, and days when she could not stop moving. AR 632. How often Lindsey Jo cycled back and forth between such extremes depended upon what was going on in the moment. When she attempted work, Lindsey Jo testified she had "constant difficulty" with attendance, "but that didn't become an issue until [she] started slipping and started getting depressed and not wanting to be around other people, and [her] anxiety kicked in, having anxiety attacks." AR 633. Her manic episodes caused her to ask a manager if she could walk away and take breaks more often, and there were times she went home early from work because of her episodes.

Lindsey Jo testified that the treatment she received for her mental health included seeing a psychologist and psychiatrist. She saw the same psychiatrist, Ghassan Bitar, M.D., once a month to once every three months since 2012. However, she explained that she came in for an office visit three months before the second hearing and Dr. Bitar said she was noncompliant with her medications. He

4

asked why she was not taking her Tegretol[3], Lindsey Jo told him she had been in contact with the nurse, and Dr. Bitar disagreed and said there was no record that she called and asked him to change medication. Lindsey Jo added that she was supposed to take two Tregretol but only took one because of side effects. She testified the Tegretol caused her nausea and tiredness, and she called his office "multiple times" to discuss the side effects and spoke with his nurse Cheryl. AR 634-35. Per Lindsey Jo, the nurse told her she would put the notes down for Dr. Bitar to look at and get back to Lindsey Jo.

Lindsey Jo said she continued to see her psychologist, Robert Glazeski, Ph.D., though he was retiring in December 2017. She started to see a therapist and psychologist in Pontiac, and her primary care physician provided her with medications until she could get in to see a new psychiatrist. She usually saw Dr. Glazeski about once a month to once every three months for therapy. She next testified about her difficulty interacting with other people she encountered during the day, her lack of a circle of friends with which she socialized, and the frequency with which she visited her father (four to six days a week).

Lindsey Jo stated she had problems paying attention to things and focusing on things from start to finish. She believed she missed "probably over 75%" of each job due to depressive or other mental health symptoms. AR 638. She believed absenteeism contributed to her low earnings. She also testified about how the household chores were done (her son's and boyfriend's assistance). While she was previously involved in Mothers of Preschoolers (MOPS) and Heartland Head Start, she started to slowly in the last few years become less and less involved in

---

[3] Tegretol is used "to treat episodes of mania . . . or mixed episodes . . . in patients with bipolar I disorder[.]" MedlinePlus.gov, https://medlineplus.gov/druginfo/meds/a682237.html (last visited Dec. 13, 2019).

them. She testified that was due to her mental state. She knew none of her son's friends or their parents.

Upon questioning by the ALJ, Lindsey Jo testified that MOPS and Heartland Head Start included meetings which she was able to attend, though she missed attending a few times. She recently tried to go back to college but ultimately dropped out within the first few weeks because she "slowly started falling down again, not feeling very well, and it slowly caught up to [her] thinking that [she] had it all together and [she] didn't." AR 642-43. She explained that she was able to get herself in for job interviews and to do well enough to get the job, but she could not keep the job because she would "do good" for a period of time and then she would "slowly dip down to that part where [she] exhausted [herself]." AR 645. Lindsey Jo further testified that she had help from her ex-husband taking care of her son when he was younger, which included Lindsey Jo's ex-husband helping her get up in the mornings; the medication she was on at that time made her "very tired" and "very groggy." AR 646.

The VE was then questioned. The ALJ first presented the VE with a hypothetical individual the same age as Lindsey Jo with no exertional, postural, manipulative, or environmental limitations, but who was limited to tasks that could be learned within 30 days that were routine in nature. Further:

> This individual should be in an environment that has no hourly production quotas, so the work expectations should be shift or day-based. Additionally this individual should be in an environment that requires no interaction with the general public, no more than occasional interaction with coworkers or supervisors.

AR 649-50. The VE responded that such a hypothetical individual would be able to do Lindsey Jo's past job as a janitor as well as additional jobs the VE listed. The ALJ added to the hypothetical that the individual needed to be in an environment where tasks were performed independently such that there would be no team

6

work or tandem tasks. The VE answered such a limitation would reduce the number of janitor jobs, but the other listed jobs would not be affected. The ALJ then asked whether the hypothetical individual's difficulty getting out of bed and functioning such that the individual would routinely miss one day of work per month on a regular and continuing basis would affect the individual's ability to maintain the listed jobs. The VE responded that would eliminate unskilled jobs. The VE similarly answered that if the individual were to show up an hour late or leave an hour early from work, that was "going to be way too much, yes." AR 652. Next, the VE testified that all the listed jobs would be eliminated if the individual was able to obtain one of the jobs but, because she was anxious, she would have difficulty focusing on the tasks at hand such that she lost 15% productivity on a regular and continuing basis.

### III

In her Decision, the ALJ first explained that Lindsey Jo "must demonstrate that she was disabled during [the period June 1, 2009 (her alleged onset date) through September 30, 2014 (her date last insured (DLI))] to be entitled to [DIB] and a period of disability." AR 599. The ALJ determined at Step Two that Lindsey Jo had the following severe impairments: bipolar disorder and anxiety. *Id.* At Step Three, the ALJ considered the "paragraph B" criteria of Listings 12.04 (Depressive, bipolar and related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders), specifically the four broad areas of functioning found in "paragraph B." The ALJ determined Lindsey Jo had moderate limitation in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. The ALJ found only mild limitation in the remaining area of understanding, remembering, or applying information.

The ALJ made the following residual functional capacity (RFC) finding:

> [T]hrough the date last insured, the claimant had the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: she was a [sic] limited to jobs where tasks could be learned within 30 days, where there were no hourly production quotas, where there was no contact with the general public, where there was no more than occasional contact with coworkers or supervisors, and where there were no teamwork or tandem tasks.

AR 603. In her Decision, the ALJ discussed Lindsey Jo's varied past jobs, the reasons she believed she could not work when she applied for disability in 2012, and her reported daily activities in July 2012 and November 2012. The ALJ also set forth Lindsey Jo's testimony at the December 2013 and September 2017 hearings, the treatment records pertaining to her mental health, and the opinions of record.

The ALJ pointed to the objective medical evidence, Lindsey Jo's daily activities, "recent" medical evidence, the lack of disabling side effects due to medication, and the fact Lindsey Jo was generally treated with conservative measures as inconsistent with Lindsey Jo's allegation of complete and total disability. The ALJ recited the assessments and opinions provided by Lindsey Jo's treating psychologist Dr. Glazeski in November 2012, December 2012, October 2013, and June 2014 and treating psychiatrist Dr. Bitar in June 2012, August 2012, October 2013, and June 2014. The ALJ determined their assessments that Lindsey Jo was unable to perform even a low stress job or was unable to sustain full-time employment were not confirmed by those professionals' supplied office examination notes, treatment notes, and test results.

The ALJ then emphasized that those earlier assessments were:

> contradicted by further statements of these two mental health professionals, one of whom has discontinued treatment of the claimant due to her unreliability, her inconsistent report of

8

symptoms, and her failure to follow medical advice concerning prescription medication.

AR 605.  The ALJ summarized the events regarding Lindsey Jo's failure to regularly refill her Tregretol prescripton and Dr. Bitar's resulting conclusion in February 2017 that Lindsey Jo was "unreliable."  AR 606 (citing AR 912-915).  Dr. Bitar ultimately terminated her from treatment.  The ALJ also cited to Dr. Glazeski's June 2017 treatment record in which he noted Lindsey Jo's report that Dr. Bitar discontinued treatment with her due to "noncompliance with regard to medicine."  AR 606 (citing AR 933).  The ALJ included Dr. Glazeski's June 2017 note provided Lindsey Jo had "not been taking medications."  *Id*.

The ALJ concluded that Drs. Bitar and Glazeski's earlier opinions and assessments that Lindsey Jo was essentially unable to sustain gainful employment due to her mental health issues could not be afforded significant probative weight given that they were contradicted by Lindsey Jo's later statements about her lack of compliance and unreliability and her description of limitations and activities. As for the other opinion evidence, the ALJ determined the State Agency psychologists' August 2012 and January 2013 opinions were of "limited probative value," and Lindsey Jo's ex-husband's November 2012 third party report was granted "little, if any, probative weight."  AR 607.

### IV

Lindsey Jo argues:  1) the ALJ failed to properly weigh the medical opinion evidence and failed to properly support the mental RFC finding; 2) the ALJ failed to properly evaluate Lindsey Jo's testimony; 3) the ALJ relied upon a flawed hypothetical question to the VE; and 4) the ALJ was not properly appointed pursuant to the Appointments Clause of Article II of the United States Constitution.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20

C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Lindsey Jo claims error on the ALJ's part at Steps Four and Five in addition to her claim that the ALJ was not properly appointed to hear her case in the first place. As for her Appointments Clause argument, Lindsey Jo states that the Court need not address this issue if remand is found to be appropriate on other grounds. The Court finds that remand is appropriate on

other grounds for the reasons set forth *infra*, and thus, it is unnecessary for the Court to address Lindsey Jo's Appointments Clause argument.

### A

While Lindsey Jo made four discrete arguments ("points" as she identified them) in her Motion for Summary Judgment, the Commissioner completely failed to address one of them: that the ALJ relied on a flawed hypothetical question to the VE. As a result of the Commissioner's failure, he has waived any response to that argument. *See Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002) ("A party waives any argument that it does not raise before the district court"); *Delapaz v. Richardson*, 634 F.3d 895, 900 (7th Cir. 2011) ("As the district court noted, appellants did not address that argument in their response brief below. Consequently, they waived the issue"); *Thompkins v. Astrue*, No. 09 C 1339, 2011 WL 3325795, at *2 (N.D. Ill. Aug. 2, 2011) (explaining the Commissioner essentially waived any objection to the plaintiff's claim where the Commissioner did not address the plaintiff's argument that the ALJ erred by failing to assign specific weights to the medical opinions).

Lindsey Jo argues that the ALJ's RFC limitation to tasks that could be learned within 30 days that are routine in nature and work in an environment with no hourly production quotas do not account for the moderate limitations found in Lindsey Jo's concentration, persistence, or pace (CPP) nor for the moderate limitations found in adapting or managing herself. "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). The hypothetical must therefore "explicitly account for" deficiencies in concentration, persistence, or pace. *DeCamp v. Berryhill*, 916 F.3d 671, 975 (7th Cir. 2019). The Seventh Circuit recently reiterated the ALJ's obligation in that regard: "Again and again, we have said that when an ALJ finds

there are documented limitations of [CPP], the hypothetical question presented to the VE must account for these limitations." *Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019) (collecting cases).

Here, the ALJ limited Lindsey Jo to jobs "where tasks could be learned within 30 days." AR 603. The ALJ presented to the VE that the hypothetical individual be limited to tasks that could be learned within 30 days "that are routine in nature." AR 649. Thus, the ALJ limited her to unskilled work. *See* 20 C.F.R. § 404.1568(a) (defining unskilled work as work "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time . . . and a person can usually learn to do the job in 30 days . . ."). However, the Seventh Circuit has explained that whether work can be learned by demonstration in less than 30 days is "unrelated to the question of whether an individual with mental impairments – *e.g.*, with difficulties maintaining concentration, persistence, or pace – can perform such work." *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015). The ALJ also limited Lindsey Jo to "no contact with the general public" and "no more than occasional contact with coworkers or supervisors." Again, the Seventh Circuit has "repeatedly rejected the notion" that "confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Id*. at 814-15 (citing *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014)).

Finally, the ALJ limited Lindsey Jo to jobs with "no hourly production quotas" and "no teamwork or tandem tasks." AR 603. Yet again, the Seventh Circuit has rejected such limitations as sufficient to account for limitations in CPP. *See DeCamp*, 916 F.3d at 675-76 (commenting that the Seventh Circuit has previously rejected formulations similar to the one in that case that the claimant be limited to "unskilled work" with no "fast-paced production line or tandem tasks" "because there is no basis to suggest that eliminating jobs with strict

production quotas or a fast pace may serve as a proxy for including a moderate limitation on [CPP]"). In her Decision, the ALJ explained that because of Lindsey Jo's bipolar disorder and anxiety, she would be limited to job tasks that could be learned within 30 days, and because of her depressed mood and anxiousness, she would be limited as set forth in the RFC (no strict production quotas, no contact with general public, no more than occasional contact with coworkers and supervisors, no teamwork or tandem tasks). Those broad statements amount to nothing more than the ALJ's apparent attempt to connect the dots between the evidence and her mental RFC assessment. She nevertheless remained duty-bound to *explicitly* account for deficiencies in concentration, persistence, or pace to the VE at the hearing. As a district court within this circuit provided:

> While there "may be instances where a lapse on the part of the ALJ in framing the hypothetical will not result in a remand," . . . by failing to respond to Ms. Razor's argument, the Commissioner has waived any argument that this is one of those cases. Accordingly, the Court agrees with Ms. Razor that the ALJ in this case committed reversible error and that her case must be remanded.

*Razor v. Colvin*, No. 1:14-cv-1179, 2015 WL 1397175, at *5 (S.D. Ind. Mar. 26, 2015) (internal citation omitted). Similarly, here, the Commissioner has made no argument in defense of the ALJ's hypothetical to the VE and the Court will certainly not do so on his behalf.

Lindsey Jo also argues that the ALJ did not describe any restrictions in the areas of functioning encompassed in the broad area of functioning of adapting or managing oneself (in which the ALJ found moderate limitation) in the accepted hypothetical to the VE. She posits this error appears to be a matter of first impression in the Seventh Circuit. Given Lindsey Jo's position, the Commissioner's utter failure to address this argument is made more significant. Once again, the Court will not make the Commissioner's arguments for it,

14

especially where there appears a dearth of case law on the issue. This matter should be remanded.

**B**

In light of the foregoing, the Court will not delve into Lindsey Jo's remaining arguments. The Court does note however, that the Commissioner also failed to respond to Lindsey Jo's argument that the ALJ failed to consider her uncontradicted testimony that she advised the doctor's nurse she was not taking the prescribed dose of Tegretol because of side effects of fatigue and nausea. The Commissioner failed to do so in the face of a Decision that placed great emphasis upon a treating psychiatrist's decision to terminate his relationship with Lindsey Jo based upon her poor medication compliance. SSR 16-3p explicitly provides that an ALJ is to consider the "type, dosage, effectiveness, and side effects of any medication" the claimant takes to alleviate symptoms. SSR 16-3p at *8. It further provides that an individual's alleged intensity and persistence of symptoms will not be found inconsistent with the record evidence for failure to follow prescribed treatment that might improve symptoms without considering possible reasons why the individual may not comply with that prescribed treatment. SSR 16-3p at *9-10.

Lastly, Lindsey Jo contends at the conclusion of her Motion for Summary Judgment that the Commissioner's Decision should be reversed solely for a calculation and award of benefits as she filed her application seven years ago, her DLI expired nearly five years ago, and it is thus unlikely that any additional probative evidence could be produced if the case were remanded. As set forth at the outset of the Court's analysis, a court must determine both that substantial evidence supports the ALJ's decision and that the proper legal standards were applied. The Commissioner waived his response to Lindsey Jo's argument that the ALJ committed legal error by presenting a hypothetical question to the VE that

15

did not account for her moderate limitations in CPP. Additionally, because of the legal error identified *supra* in Section IV.A., not all factual issues have been resolved; the question remains whether the job numbers the ALJ elicited from the VE were accurate in light of a hypothetical question that did not sufficiently account for moderate limitations in CPP. Thus, while remand is warranted, the Court does not recommend remand for a calculation and award of benefits. "An award of benefits is appropriate, however, only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion – that the applicant qualified for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).

## V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 9) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 13) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Report & Recommendation Pursuant to 42 U.S.C. §405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended*.

Entered on December 16, 2019.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE